(No. 11737.—Decree affirmed.)
U. L. COURTER, Appellant, *vs.* LUCY A. COURTER *et al.*
Appellees.

*Opinion filed February 20, 1918—Rehearing denied April 12, 1918.*

1. ADVANCEMENTS—*what is an advancement.* An advancement is the giving by a parent to his child or heir, by way of anticipation, the whole or a part of what is supposed the donee will be entitled to on the death of the donor.

2. SAME—*under common law donee had right of election as to bringing advancement into hotchpot.* Under the common law, if the child or heir to whom an advancement had been made desired to share in the estate of the ancestor he was required to bring the property received by him into hotchpot, and thereupon he became entitled to his equal share of the whole estate, but he had the right to elect whether to accept the advancement in full of his share or bring it into hotchpot.

3. SAME—*under present statute an advancement becomes part of donor's estate immediately upon his death intestate.* Under our present statute, property which has been given by way of advancement becomes a part of the donor's estate, for the purpose of determining the distribution and division of the estate, immediately upon the death of the donor intestate, and the donee has no election as to bringing it into hotchpot, but if the advancement exceeds the donee's share he is not required to refund any part of it.

4. SAME—*value of the donee's share of estate is the value at the donor's death.* Whether an advancement of land of expressed value exceeds the value of the donee's share of the estate of the intestate donor depends upon the value of such share at the time of the donor's death and not at a later period, after the estate has greatly increased in value.

APPEAL from the Circuit Court of Wabash county; the Hon. JULIUS C. KERN, Judge, presiding.

P. J. KOLB, and M. J. WHITE, for appellant.

S. J. GEE, (GREEN & RISLEY, of counsel,) for appellees Lucy A. Courter and W. B. King.

CREIGHTON & THOMAS, for appellees the Biehls and the Sian Oil and Gas Company.

Mr. JUSTICE COOKE delivered the opinion of the court:

U. L. Courter, the appellant, filed his bill for partition in the circuit court of Wabash county. After a hearing before the chancellor a decree was entered dismissing the bill for want of equity, and appellant prosecuted this appeal.

Appellant's father, Edward H. Courter, was during his lifetime the owner of the northwest quarter of section 3, the northwest quarter of the northeast quarter of section 3 and the southwest quarter of the northeast quarter of section 3, all in township 1, north, range 12, west, in Wabash county. On June 19, 1884, he conveyed to appellant the southwest quarter of the northeast quarter of said section 3, and appellant thereupon signed and delivered to his father an instrument in the words and figures following:

"ALLENDALE, *June 19th, 1884.*
"Received of E. H. Courter one thousand dollars worth of land, being the southwest quarter of the northeast quarter in section 3, range 12, west, in the county of Wabash, State of Illinois, to be a part of the undersigned intrust and each legal heir shall be made equal to said amount from the goods and chattels of the said estate of E. H. Courter.
U. L. COURTER."

Appellant erected a house on this 40-acre tract and lived there until 1897, when he moved to Mt. Carmel, where he has since resided.

On November 29, 1884, Edward H. Courter died intestate, leaving him surviving Lucy A. Courter, his widow, and U. L. Courter, W. F. Courter, George E. Courter and Nevada Courter, his children, and certain grandchildren, who were the children of his deceased daughter, Rachel McFarland, as his only heirs-at-law. On December 15, 1884, W. F. Courter was appointed administrator. He filed an inventory, listing all the real estate above described, including that which had been conveyed to appellant, as part of the estate of Edward H. Courter. On December 28, 1885, the administrator filed a petition in the county court of Wabash county alleging that Edward H. Courter died seized

of all the real estate above described and praying that dower and homestead be set off to Lucy A. Courter, the widow, and that so much of said real estate as might be necessary be ordered sold to pay debts. The commissioners appointed in that proceeding set off to the widow as homestead 2½ acres in the southwest quarter of the northwest quarter of section 3, and as dower the balance of the southwest quarter of the northwest quarter of section 3 and 18.88 acres off the south side of the northwest quarter of the northwest quarter of section 3. On June 5, 1886, the administrator, under the order of the county court, sold to appellant the northwest quarter of the northeast quarter of section 3 for $610; to William McFarland the northeast quarter of the northwest quarter of section 3 for $730; and to Lucy A. Courter the southeast quarter of the northwest quarter of section 3 for $730. After paying the debts of the estate there remained from the proceeds of sale $178.66 for distribution. The administrator distributed this balance among W. F. Courter, George E. Courter, Nevada Courter and the children of Rachel McFarland, deceased, and on December 26, 1887, filed his final report, together with receipts signed by the distributees and the instrument of June 19, 1884, which appellant had executed and delivered to his father, and was discharged.

After the death of Edward H. Courter his widow continued to reside on the land set off to her as homestead and dower. On November 15, 1886, W. F. Courter, George E. Courter and Nevada Courter joined in a quit-claim deed to Lucy A. Courter for the west half of the northwest quarter of section 3 for the expressed consideration of $1500, and the proof shows that each received $500 therefor. On December 2, 1897, the children of Rachel McFarland, deceased, (the youngest of said children having just become of age,) joined in a quit-claim deed to William B. King, a son of Lucy A. Courter by a former marriage, for the west half of the northwest quarter of section 3, and on

283 — 9

December 28, 1900, Lucy A. Courter conveyed to William B. King 24 acres off the north side of the west half of the northwest quarter of section 3 and one acre out of the southwest corner of the northwest quarter of the northwest quarter of section 3. King built a house on the one-acre tract and moved into the house in January, 1901. In April, 1905, Lucy A. Courter conveyed to King an additional three acres, which, together with the one-acre tract conveyed to him on December 28, 1900, is described as the west four acres of the south 18.88 acres of the northwest quarter of the northwest quarter of section 3, being a portion of the land assigned to Lucy A. Courter as dower. Shortly after receiving the deed from the McFarland children King began clearing the timber off the north 24 acres of the west half of the northwest quarter of section 3 and cleared about 20 acres, which ever since have been in cultivation. In January, 1910, King sold and conveyed to Mrs. William L. Ramsey for $1300 the four-acre tract above described, and Mrs. Ramsey moved upon and occupied those premises until September, 1911, when she sold and conveyed for $1250 the four-acre tract to Adam Biehl and Alice R. Biehl, and the Biehls have since been living upon that tract. Adam Biehl died on January 13, 1915, leaving him surviving Alice R. Biehl, his widow, and Pearl Biehl and Olive Biehl, his children, as his only heirs-at-law. On May 18, 1912, Adam Biehl and Alice R. Biehl gave an oil lease upon the four-acre tract, and on September 1, 1915, Lucy A. Courter and William B. King gave oil leases upon the remainder of the west half of the northwest quarter of section 3. On April 1, 1916, a producing oil well was drilled on the southwest quarter of the northwest quarter of section 3, and since that date there have been six other producing oil wells drilled on the west half of the northwest quarter of section 3 under the leases made by Lucy A. Courter and William B. King and one producing oil well under the lease made by Adam Biehl and Alice R. Biehl.

On February 8, 1917, appellant filed his bill for partition of the west half of the northwest quarter of section 3, claiming to be the owner in fee of an undivided one-fifth thereof by descent from Edward H. Courter, and offering to bring into hotchpot the $1000 fixed in the instrument signed by him on June 19, 1884, as the value of the real estate conveyed to him by his father, and consenting that the same be charged against his interest in his father's estate. The bill alleged that Lucy A. Courter had, by leasing said land for oil and permitting and consenting to the removal of large quantities of oil therefrom, committed waste and thereby forfeited her dower interest, and that she had abandoned her homestead by removing therefrom, wherefore appellant was entitled to immediate partition. Lucy A. Courter, William B. King, Alice R. Biehl, Pearl Biehl, Olive Biehl, and the oil companies operating the oil wells on the premises under the leases above mentioned, were made parties defendant, and all of them answered denying that appellant had any interest in the premises.

Appellant contends that the instrument which he signed on June 19, 1884, evidences an advancement to him by his father of land of the value of $1000, and that he is now entitled to share in the real estate left by his father upon bringing into hotchpot the sum of $1000. Appellees, on the contrary, contend that the transaction between appellant and his father on June 19, 1884, did not constitute an advancement but was a sale and release by appellant of all interest and expectancy in his father's estate in consideration of the conveyance of the southwest quarter of the northeast quarter of section 3 to appellant. The transaction was clearly an advancement, which is the giving by a parent to the child or heir, by way of anticipation, the whole or a part of what is supposed the donee will be entitled to on the death of the party making it. (*Grattan* v. *Grattan,* 18 Ill. 167; *Wallace* v. *Reddick,* 119 id. 151.) Under the common law and under the early statutes enacted in this State

upon the subject, if the child or heir to whom an advance-
ment had been made desired to share in the estate of the
ancestor he was required to bring the property received by
him into hotchpot, and thereupon he became entitled to his
equal share of the whole estate. He had the right to elect
whether he would accept the advancement in full of his
share of the estate or bring it into hotchpot. (Wills act of
1829, sec. 45; Wills act of 1845, sec. 51; *Grattan* v. *Grat-
tan, supra.*) In 1872 the legislature passed an act in regard
to the descent of property which made radical changes in
the law applicable to advancements as theretofore exist-
ing in this State. Sections 4, 5, 6 and 7 of that act are
as follows:

"Sec. 4. Any real or personal estate given by an intes-
tate in his lifetime as an advancement to any child or lineal
descendant, shall be considered as part of the intestate's
estate, so far as it regards the divisions and distribution
thereof among his issue, and shall be taken by such child
or other descendant towards his share of the intestate's es-
tate; but he shall not be required to refund any part there-
of, although it exceeds his share.

"Sec. 5. If such advancement is made in real estate, and
the value thereof is expressed in the conveyance or in the
charge thereof made by the intestate, or in the written ac-
knowledgment thereof by the party receiving it, it shall be
considered as of that value in the divisions and distribution
of the estate; otherwise, it shall be estimated according to
its value when given.

"Sec. 6. If such advancement is made in personal es-
tate of the intestate, the value thereof to be estimated the
same as that of real estate; and if, in either case, it ex-
ceeds the share of real or personal estate, respectively, that
would have come to the heir so advanced, he shall not re-
fund any part of it, but shall receive so much less of the
other part of the intestate's estate as will make his whole

share equal to the shares of other heirs who are in the same degree with him.

"Sec. 7. No gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant."

Since the adoption of the act of 1872 the child or descendant to whom an advancement has been made is no longer required to elect whether he will accept the advancement in full or bring it into hotchpot before being permitted to share in the estate of the ancestor. The property received by him as an advancement is by operation of law, upon the death of the intestate, brought into the estate for the purpose of determining the division and distribution of the estate with like effect as when, under the old law, it was brought into hotchpot by act of the person to whom the advancement had been made, with this exception: If the money or property advanced exceeds his share of the estate he cannot be required to refund any part thereof. It is to be further noted that while under the old law the property advanced did not become a part of the estate for the purpose of determining the division or distribution of the estate until brought into the estate by act of the party to whom the advancement had been made, which might occur at any time prior to division or distribution of the estate, under the present statute of 1872 the property advanced becomes a part of the estate for the purpose of determining the division and distribution of the estate immediately upon the death of the intestate. Applying the statute to the case now before us, upon the death of Edward H. Courter the real estate conveyed by him to appellant on June 19, 1884, became by operation of law, without any affirmative act by appellant, part of the estate of Courter for the purpose of determining the division and distribution of the estate among the issue of Courter. It was inventoried as part of

his estate and was included in the petition to sell real estate to pay debts, to which appellant was a party defendant. In determining the division and distribution of the estate among the heirs of Edward H. Courter the law charged appellant with having received certain land of the value of $1000. If this sum was equal to or exceeded the value of appellant's share in the whole estate at the time of his father's death then appellant had no further share or interest in his father's estate. There is no direct proof of the value of the whole estate at that time, but we think the facts and circumstances in evidence warrant the conclusion that $1000 exceeded the value of appellant's share in the estate as that value existed at the time of his father's death. When the conveyance was made to appellant, Edward H. Courter was the owner of 240 acres of land lying in a body. He was then married and had four children and the issue of a deceased child. He conveyed to appellant, as an advancement, one-sixth of his land. After his death it developed that his personal estate was insufficient to pay his debts. Upon the petition of the administrator approximately 66 acres of the remaining 200 acres were set off to the widow as dower and homestead and 120 acres of the balance were sold to pay debts. At this sale each 40-acre tract of the farm sold for less than $1000. Aside from the advancement made to appellant there then remained for division and distribution among the children and lineal descendants of Edward H. Courter $178.66 from the proceeds of sale of the 120 acres, 24 acres of unincumbered timber land, and the remainder in the land assigned to Lucy A. Courter as homestead and dower after the termination of her life estate. Each of the children of Courter except appellant, shortly before the final settlement and distribution by the administrator, sold and conveyed his or her interest in all the estate left by Courter, except the $178.66 in the hands of the administrator, to Lucy A. Courter for

$500, and thereafter, in 1897, the children of Rachel Mc-Farland sold and conveyed to William B. King all their interest in the estate, except the sum of $44.66 received through the administrator, for $600. The administrator did not pay to appellant any part of the $178.66 remaining, after the payment of debts, from the proceeds of sale of real estate, but distributed that money among the other children and descendants of Edward H. Courter, and filed in the estate, with his final report showing distribution, the instrument evidencing the advancement to appellant for the purpose of showing why appellant did not share in that distribution. Appellant made no objection to the distribution made by the administrator, and during a period of more than thirty years made no claim to the land in the possession of Lucy A. Courter and William B. King and their grantees, although 24 acres of this land was unincumbered by dower or homestead. It was not until oil in paying quantities was discovered on this land that appellant asserted any claim to the estate left by his father, and so far as the record discloses it was the discovery of oil that increased the value of the undivided one-fifth interest in this land now claimed by appellant to a sum exceeding $1000. Whether appellant has any interest in the real estate in controversy depends upon whether an undivided one-fifth interest in his father's estate was worth more than $1000 at the time of his father's death,—not whether thirty years later, and after the discovery of oil on the premises, that undivided one-fifth interest is worth more than $1000.

In our opinion the evidence shows that appellant has no interest in the real estate in controversy, and the decree of the circuit court is therefore affirmed.

*Decree affirmed.*